## UNITED STATES v. SLATER.

*(Circuit Court, D. Texas. April 14, 1881.)*

1. ELECTIVE FRAN. HISE—RESIDENCE—CONSTITUTION OF TEXAS.

The contitution of the state of Texas provides that " every male person * * * who shall have resided in this state one year next preceding an election, and the last six months within the district or county in which he offers to vote, shall be deemed a qualified elector; * * * and all electors shall vote in the election precinct of their residence." *Held*, under this provision, that six months' residence within the district would be sufficient to qualify an elector to vote for all state and district officers.—[ED.

Motion to Quash Information.

*F. W. Miner,* for the United States.

*J. A. Martin,* for defendant.

McCormick, D. J. The information in this case charges in substance "that the defendant, on the second of November, 1880, at Marlin, Falls county, Texas, as an officer of a general election, including among other officers to be voted for a representative in congress, did unlawfully and knowingly receive the vote of one J. P. Kramer, a person who was not entitled to vote then and there at said election, because he, the said J. P. Kramer, had not been a citizen of and had not resided in Falls county for and during six months next preceding said election, but the said J. P. Kramer had been a resident and citizen of Robertson county, Texas, down to a period within less than six months prior to said election."

The defendant moves to quash the information on the ground—"*First,* that the bill charges no offence against the laws of the United States; *second,* because it does not appear from said bill of information that the said J. P. Kramer did not reside for the last six months in the district in which he offered to vote and did vote."

The question raised by this motion is, does this bill of information show that said J. P. Kramer was not entitled to vote at all, at the time and place when and where said election was held? Our present constitution, then in force, declares "every male person, [not subject to certain disqualifications,] who shall have attained the age of 21 years, and who shall be a citizen of the United States, and who shall have resided in this state one year next preceding an election, and the last six months within the district or county in which he offers to vote, shall be deemed a qualified elector; * * * and all electors shall vote in the election precinct of their residence: *provided,* that all electors living in any unorganized county may vote at any election precinct in the county to which such unorganized county is attached for judicial purposes."

Of our previous constitutions, that of 1845 and that of 1866, the provisions of which were in force from the original formation of the state to the thirtieth of March, 1870,

(besides other qualifications not necessary to mention,) provide that a person who "shall have resided in this state one year next preceding an election, and the last six months within the district, county, city, or town in which he offers to vote, shall be deemed a qualified elector; and should such qualified elector happen to be in any other county situated in the district in which he resides, at the time of an election, he shall be permitted to vote for any district officer: *provided*, that the qualified electors shall be permitted to vote anywhere in the state for state officers."

Here the qualification to vote, so far as residence is an element of it, is manifestly that he shall have resided one year in the state and the last six months within some legally-defined district of the state; but such a residence only qualifies him to vote for state officers and for district officers when voting in some county embraced in the district, as defined by law, in which he resides. It is true that he cannot reside in any district without at the same time residing in some county, (or territory,) organized or unorganized; but it will not be claimed that he cannot reside six months in a district composed of several counties, without residing six months in any one county. And there is no more reason in requiring that the six-months' residence should be in one county in the district to entitle him to vote for state and district officers, than there would be in going further and requiring that the six-months' residence should be in the same city or town in the county to entitle him to vote for county officers; to do either would be to disregard the plain import of the language of the constitution. To my mind it is perfectly clear that from 1845 to 1870 J. P. Kramer would not have lost his right to vote for state and district officers by moving from Robertson county to Falls county within six months next before a general election.

The constitution of 1870 has two distinct and not entirely harmonious provisions on the subject of suffrage—article 3, § 1, and art. 6, § 1. That constitution, however, had the same provision in reference to voting for state officers anywhere in the state, and district officers anywhere in the district of the

voter's residence, as is contained in the preceding constitution, as above shown. The constitution of 1870 also provided that only such as were "duly registered" could vote. Our present constitution provides that "no law shall ever be enacted requiring a registration of the voters of this state," and this provision occurs in a section which says: "In all elections by the people the vote shall be by ballot, and the legislature shall provide for the numbering of tickets, and make such other regulations as may be necessary to detect and punish fraud and preserve the purity of the ballot-box; but no law shall ever be enacted requiring a registration of the voters of this state." This section, to my mind, fully explains (if it needed other explanation than is furnished by common observation and experience) the provision heretofore noticed that "all electors shall vote in the election precinct of their residence."

But if, being a citizen of the United States, a residence of one year in the state, and the last six months next before the election within the district, will give him a right to vote in the election precinct in which he resides, for what officers can he vote? Our present constitution provides, (article 6, § 3:) "All qualified electors of the state, * * * who shall have resided for six months immediately preceding an election within the limits of any city or corporate town, shall have the right to vote for mayor and all other elective officers." It is clear that a residence in the district for six months does not give the right to vote for city or town officers, unless the residence has been in said city or town; and, by parity of reasoning, such residence would not give the right to vote for county officers unless said six-months' residence had been within the county; and, by a like parity of reasoning, such residence would give the privilege of voting for district officers and for state officers, he having the other qualifications, and having resided the required six months in the district, and the required one year in the state, next before the election, and duly presenting himself in the election precinct in which he resides. And this rational conclusion is made irresistibly strong by the previous uniform practice of permitting

qualified electors of the state to vote for state and district officers, where their residence was not such as to authorize them to vote for county officers at the time and place of their offering to vote.

Our government is founded on the elective franchise. The right to exercise this franchise is declared, defined, and guarantied by organic provisions superior to any of the departments of the government. The legislature cannot enlarge it or restrict it, and can only regulate it so far as their authority to do so is expressly, or by necessary implication, given in the constitution. Much less may the courts presume to restrict it by construction. On the contrary, the whole spirit of our institutions constrains the courts to give our organic provisions, on the subject of the enjoyment of the right of suffrage, such a construction as will permit the most liberal exercise of this supreme right which is at all reasonably consistent with the terms of those provisions. From a very careful consideration of the subject, I am of the opinion that, for all that is shown in this bill of information, said J. P. Kramer was entitled to vote at the time and place mentioned, and that the motion should be sustained; and it is so ordered.